Ellyn G. CARLSON, Plaintiff
vs.
Walter C. WITHERS, Jr., and
Richard L. WILDER, Defendants
and Rolf AUGUSTIN,
Defendant Intervenor

No. 90804

Land Court Department
of the Trial Court
Commonwealth of Massachusetts

February 5, 1982

**Walter Gallagher,** counsel for plaintiff.
**Mark D. Shuman,** counsel for defendant.

## DECISION

Plaintiff seeks by this complaint to reform two deeds in the chain of title to a parcel of land at 23 Gilson Road, Wellesley, comprised of lots 4 and 5 presently owned by her ("locus"). Plaintiff alleges that lot 5, an unregistered lot, was omitted from both deeds by the mistake of the named defendants to this action. The deeds, as written, conveyed and reconveyed lot 4, a registered lot. The plaintiff seeks to reform both deeds to include lot 5.

This is a case where plaintiff purchased what she thought was a buildable lot on which she intended to build a house, and subsequently discovered that the lot was unbuildable due to a 1964 amendment to the Wellesley Zoning By-Laws.

While the complaint named both Messrs. Withers and Wilder as defendants, the original posture of this case was non-adversarial. Neither defendant filed an answer, neither was represented by counsel before the court and neither defendant had any apparent interest in the outcome of the case. Shortly after the complaint was filed, each defendant assented to the entry of judgment against him. Both assents were drafted by plaintiff's attorney and executed on his stationery. Upon receipt of the assents, the case proceeded as an uncontested matter and judgment for the plaintiff was entered on September 7, 1978.

Shortly thereafter, defendant-intervenor Augustin filed a motion to intervene, a motion for relief from judgment, and a motion for a new trial.

Augustin's supportive memoranda set forth, **inter alia,** that his land abuts the locus; that judgment for the plaintiff would change the record title to the locus at a crucial time in relation to the zoning by-laws of the Town of Wellesley, thereby allowing plaintiff to build a dwelling on a presently unbuildable parcel; that such building would diminish the value of Augustin's land and that the nominal defendants have no present interest in either the locus or the outcome of the case.

Augustin further suggested that the status of this case raised "the spectre of possible collusion between the present plaintiff and the defendants to effect the plaintiff's objective."

In opposition to Augustin's motion to intervene, plaintiff argued that Augustin had shown no reason for the court to disturb its prior judgment, and that even if Augustin had appeared earlier, he would have lacked standing in a reformation case because, even though he was an immediate abutter to the locus, he was a stranger to its chain of title.

While the cogent arguments by the plaintiff were given substantial consideration by this court, it concluded that once Augustin had brought to its attention material information which was not otherwise before it, it was incumbent upon the court to protect against the possibility of fraud or collusion.

While it is true that Augustin is a stranger to the title to the locus and that, as such, he has no direct interest in the reformation of the deeds in question, it is clear that plaintiff presently has record title to the locus, and that the sole reason for the maintenance of this suit is to revise the back title to the locus at a specific point in time so that the Town zoning laws do not preclude the plaintiff's ability to build on her property.

In this context, and in order to attempt to accomplish substantial justice, the court granted Augustin's motions and allowed him to intervene, judgment was vacated, and the case was scheduled for trial.[1]

During the subsequent twenty-four months, a plethora of papers was filed by the plaintiff including four motions for summary judgment brought at three- to six-month intervals, which were disposed of seriatim by each of the judges of this court. Each motion was denied for the reason that the documentation before the court left unresolved the crucial factual questions as to the intentions of the parties to the deeds which plaintiff sought to reform.

The trial date was additionally delayed by requests for continuances and the plaintiff's difficulty in obtaining depositions from the named defendants, one of whom resides in a foreign jurisdiction.

The case came on to be heard on June 3, 1981 and a stenographer was sworn to record the testimony. The plaintiff called no witnesses. Thirteen documents were entered in evidence, by agreement of the parties, some of which were subject to certain reservations by the defendant-intervenor, who also rested without calling witnesses. The named defendants did not appear. All the evidence is incorporated herein for the purpose of any appeal.

1. Land Court Case No. 91756, **Augustin v. Building Inspector of the Town of Wellesley,** brought by the defendant-intervenor herein pursuant to G.L.c. 185, j ½ and c. 240, § 14A was disposed of by summary judgment in favor of plaintiff Carlson, a defendant to that action. Carlson correctly argued in that action that the decision of **McDonald's Corporation v. Town of Seekonk,** 1981 Mass. App. Ct. Adv. Sh. 1508, barred Augustin's action inasmuch as he had not pursued the administrative remedies prescribed in G.L.c. 40A, § 7.

There is no dispute as to the record title to the locus. On all the evidence, I find the following facts:

1. Plaintiff is the record owner of Lots 4 and 5 (locus) as shown on a plan entitled "Subdivision of Land in Wellesley, Massachusetts, June 15, 1954, William J. Ford, Jr., Civil Engineer", Land Court No. 3850E (the Plan). See Appendix:

2. Plaintiff acquired title to locus from Laurance E. Boyden, Jr. by deed dated March 21, 1978 and recorded on March 30, 1978 at Norfolk Registry of Deeds, Book 5447, Page 215.[2]

3. As of March 7, 1958, Walter C. Withers, Jr. and Shirley K. Withers, husband and wife, as tenants by the entirety, were the record owners of Lots 3, 4, 5 and 6 as shown on the plan. Record title to Lot 5 remained in the Witherses until April 28, 1967.

4. By deed dated February 29, 1964, Walter C. Withers, Jr. and Shirley K. Withers, husband and wife, conveyed all their right, title and interest in Lot 4 to Richard L. Wilder. Transfer Certificate of Title No. 74796 in the name of Richard L. Wilder was issued on March 2, 1964.

5. By deed dated June 13, 1966, registered as Document No. 274690, Richard L. Wilder conveyed all his right, title and interest in Lot 4 to Walter C. Withers, Jr. for consideration less than $100.00. (See Transfer Certificate of Title No. 80342).

6. Withers retained record title to Lot 4 until April 28, 1967.

7. By deed dated April 28, 1967, and recorded on May 17, 1967 at Book 4428, Page 15, Walter C. Withers, Jr., former husband of the late Shirley K. Withers,[3] conveyed all his right, title and interest in registered Lot 4 and unregistered Lot 5 to Russell F. Gooley and Billie E. Gooley, husband and wife as tenants by the entirety.(See Transfer Certificate of Title No. 82271 for Lot 4).

8. By deed dated June 18, 1968 and recorded on June 19, 1968, Russell F. Gooley and Billie E. Gooley, husband and wife, as tenants by the entirety, conveyed all their right, title and interest in Lots 4 and 5 to Laurance E. Boyden, Jr.

9. Plaintiff Carlson took title to both parcels on March 30, 1978 (see Paragraph 2 above).

10. Subsequent to the commencement of this action and after the plaintiff's first motion for summary judgment was denied, two confirmatory deeds with recitals were recorded. Each deed was executed by a named defendant on the stationery of the plaintiff's then counsel of record. The recitals attached to each deed contain long narratives which, in essence, attempted to support the plaintiff's case for reformation.

11. The first deed, recorded on September 24, 1979 at Book 5655, Page 283, is a deed from Walter C. Withers, Jr., in his own right and as surviving tenant by the entirety of Shirley K. Withers, purporting to convey all his right, title and interest in Lots 4 and 5 to Richard L. Wilder.

12. Withers' recitals set forth, **inter alia,** that the February 29, 1964 deed of Lot 4 from himself and Shirley K. Withers was intended to "completely convey to Richard L. Wilder all the right, title and interest which I and my then spouse, Shirley K. Withers, held in Lots 4 and 5 and described . . . (on the plan) . . ." He further recites that:

---

2. All instruments referred to herein as being recorded are recorded in said Registry and all references to registered instruments are to instruments registered at the Land Court division of said Registry.

3. Shirley K. Withers died on April 1, 1967. (Norfolk Probate No. 162897).

"the purpose of said conveyance (was to) separate from common ownership on that date the locus composed of lots 4 and 5 . . . from the locus composed of lots 3 and 6 . . . all of said lots having then been owned by me and my then spouse . . . and intending to make such conveyance for the purpose of preserving the independent use of lots 4 and 5 herein, together, as constituting a separate locus for future use as a single family residential building lot henceforth; but through mistake or accident lot 5 was omitted from said deed; . . ."

13. The second confirmatory deed, recorded on September 28, 1979 at Book 5657, Page 544, is a deed from Richard L. Wilder, purporting to convey all his right, title and interest in Lots 4 and 5 to Walter C. Withers, Jr.

14. Wilder's recitations set forth, **inter alia,** that the February 29, 1964 deed of Lot 4 from Walter C. Withers, Jr. and Shirley K. Withers was intended to completely convey to him all their right, title and interest in Lots 4 and 5 for reasons identical to those set forth in Withers' confirmatory deed. (See paragraph 12 above); and that the June 13, 1966 deed of Lot 4 from Wilder to Withers was intended to completely convey to the latter:

"all the right, title and interest which I held in land described in the (February 29, 1964) deed to me from said Walter C. Withers, Jr. and as further described in Recital 2, herein, and by the Confirmatory Deed from Walter C. Withers, Jr., to me dated June 22, 1979."

In addition to documentation of record title, two sets of requests for admissions served on each of the nominal defendants are in evidence. All the sets attempt to elicit admissions regarding the intent of the named defendants at the time they executed the deeds in question.[4] A deposition of defendant Wilder taken by the plaintiff on November 25, 1980 is also in evidence. (Exhibit 11)

Additionally, the Town of Wellesley Zoning By-Law (as amended through April, 1980) is in evidence. The plaintiff directed the court's attention to page 44 which reads as follows:

"FRONTAGE. There shall be provided for each lot upon which a building or structure is hereafter erected or placed a frontage of not less than sixty (60) feet. This requirement shall not apply to any lot having a frontage of less than forty (40) feet if such lot on June 21, 1951 did not adjoin other land of the same owner available for use in connection with said lot, nor to any lot having a frontage of forty (40) feet or more and less than sixty (60) feet, if such lot on March 23, 1964 did not adjoin other land of the same owner available for use in connection with said lot, nor shall it apply to lots in Business District, Business Districts A, Industrial Districts or Industrial Districts A."[5]

Inasmuch as no testimony was produced at trial, the documentation before the court is essentially the same as it was when plaintiff brought her fourth motion for summary judgment.

4. The second set of requests for admissions propounded to Richard L. Wilder is accompanied by Wilder's responses. None of the other three sets of requests was answered by Wilder or Withers. A motion to have these requests deemed admitted by virtue of defendant's failure to respond was denied by the court on May 2, 1980.

5. The thrust of plaintiff's argument is that the Witherses, in anticipation of the March, 1964 amendment to the zoning by-law, intended to convey Lots 4 and 5 to a third party (Wilder) to remove Lots 4 and 5 from the same ownership as Lots 3 and

The issue thus remains whether the plaintiff has established the mutual mistake of the parties, thereby entitling the plaintiff to reformation of the deeds in question.

The grounds for reformation of instruments are well settled in this Commonwealth. There can be no reformation of a written instrument without fraud, accident or mutual mistake. **Century Plastic Corp. v. Tupper Corp.**, 333 Mass. 531, 533 (1956), and cases cited. Where mistake is alleged, reformation is available to parties where there has been a "mutual mistake which is material to the instrument and where no rights of third persons are affected." **Beach Associates, Inc. v. Fauser**, Mass. App. Ct. (1980).[6] The mistake is alleged, party is not ground for relief. **Century Plastic Corp., supra**, at 534.

In the present case, where mutual mistake is alleged, the plaintiff's burden of proof is more stringent than a preponderance of the evidence and the deeds will be reformed only upon clear and convincing proof of mutual mistake. **Covich v. Chambers**, Mass. App. Ct. (1979).[7] See also, **Kidder v. Greenman**, 283 Mass. 601, 614 (1933) (discussing, without deciding the meaning of "full, clear and decisive" proof necessary to reform or cancel an instrument on the ground of mutual mistake).

On all the evidence, and for the reasons stated below, I find and rule that plaintiff has not sustained her burden of proof that Lot 5 was excluded from the deeds conveying and reconveying Lot 4 due to the mutual mistake of the parties thereto.

In order to establish the mutual mistake of the named defendants, plaintiff relies primarily on confirmatory deeds executed by Wilder and Withers and recorded during the pendency of this litigation, and on unanswered requests for admissions propounded by plaintiff to each named defendant.

The confirmatory deeds (Exhibits 3 and 4), while part of the record title to locus, are of little evidentiary value. This is particularly true of the confirmatory deed and recitations of defendant Wilder who contradicted his recitations during his deposition, taken subsequent to the recording of his confirmatory deed. A fair reading of Wilder's deposition (Exhibit 6) indicates that he executed the confirmatory deed as an accommodation to plaintiff's counsel and relied on the latter's representations as to the truth of the recitations therein, having no independent recollection of his intention either as grantee when he received the deed to Lot 4 from the Witherses or as grantor when he later deeded Lot 4 back to Withers. (pp. 27-35).

Additionally, both confirmatory deeds were drafted by plaintiff's counsel and executed on his stationery. In light of the totality of the circumstances surrounding the preparation and submission of the confirmatory deeds, and particularly in view of Wilder's subsequent statements which are inconsistent with his recitations, sufficient suspicions are accordingly raised which permit me to give slight, if any, evidentiary effect to his confirmatory deeds and recitations.

To prove Withers' intentions at all materials times, both as grantor and grantee of Lot 4, the plaintiff relies exclusively on the statements contained in the confirmatory deeds and recitations, none of which were subject to cross-examination either at trial or during a deposition, and on unanswered requests for admissions.

---

6, thus avoiding the requirement for 60-foot frontage as proposed in the Zoning by-law change. As of that date, Lot 5 had 50.28 feet of frontage on Gilson Road, a cul-de-sac, according to the Plan. (See Appendix).

6. 1980 Mass. App. Ct. Adv. Sh. 525, 533.

7. 1979 Mass. App. Ct. Adv. Sh. 2345, 2351 - 2352.

Plaintiff argues that pursuant to Mass. R. Civ. P. 36(a), all matters contained in the unanswered sets of requests must be deemed admitted by virtue of defendant's failure to respond. The court agrees and did, therefore, admit the sets into evidence.

The court, however, cannot agree, as plaintiff urges, that pursuant to Rule 36(b) the statements contained in the requests for admissions are conclusively established.

The court is cognizant of the mandatory language of Rule 36(a) and (b), but I am unpersuaded that technicalities of Rule 36(b) can be properly applied to the unusual facts and posture of this case.

A literal reading of Rule 36(a) and (b) indicates that properly framed requests for admissions are not only conclusively binding upon the party who fails to answer, but can also form the basis for summary judgment if no genuine issues of material fact remain as a result. Mass. R. Civ. P. 56(c). **Contra, Pickens v. Equitable Life Assurance Society,** 413 F. 2d 1390 (5th Cir. 1969), **Silvax v. Baker Tractor Corp.,** 1979 Mass. App. Div. Adv. Sh. 97.

Notwithstanding the above, I choose not to apply literally Rule 36(b) in this case for two reasons. First, Messrs. Withers and Wilder are nominal defendants, neither of whom are embroiled in a controversy with the plaintiff. In fact, both named defendants were reticent to become involved in this litigation in any way, having no present interest in the locus. Rule 36 presupposes the existence of controversy between parties and, like its federal counterpart, is a vehicle through which facts and issues in controversy can be narrowed prior to trial. It is not meant to be used as a vehicle for circumventing one's burden of proof of essential facts.

In this case, if I were to rule that all the facts contained in the three unanswered sets of requests for admissions were conclusively established, the case would be disposed of on the strength of Rule 36.

I do not believe that the Rule is meant to be interpreted in such a way as to allow a plaintiff to name nominal disinterested defendants and then build a case devoid of adversity by drafting requests perhaps knowing they will not be answered. A strict application of Rule 36 in this case would, in my view, be a perversion of the Rules of Civil Procedure and would substantially undermine this court's search for truth.

In addition, even if the statements contained in the unanswered requests for admissions are conclusively binding upon Withers and Wilder and operate to estop them from introducing contradictory evidence, Rule 36 does not prevent Augustin, the defendant-intervenor, from introducing evidence by deposition or otherwise that rebuts evidence introduced by operation of the rule.

In the instant case, neither Withers nor Wilder appeared at trial so there was no attempt on their part to circumvent the operation of Rule 36. Augustin, however, has introduced contradictory evidence in the form of 1) statements made by Wilder during the course of deposition by Augustin's counsel, and 2) recitations in a deed of Lot 6 from Walter C. Withers to Laurance E. Boyden, Jr. and Phyllis K. Boyden (Exhibit 5) describing Lot 6 as bounded "NORTHEASTERLY again by land of Walter C. Withers, Jr.". This deed is dated May 15, 1965 and is at least some evidence, though not conclusive evidence, that as of that date (after he conveyed Lot 4 to Wilder and before Wilder reconveyed Lot 4 to him) Withers had knowledge of his continuing ownership of Lot 5.

Even assuming **arguendo** that by operation of Rule 36 plaintiff has succeeded in conclusively establishing the mistaken omission of Lot 5 from the February 29, 1964 conveyance of Lot 4 from the Witherses to Wilder, I find that plaintiff has failed to establish either defendants' intent in the reconveyance of Lot 5 by deed dated June 13, 1966. No requests for admission sought to elicit the intent of either Withers or Wilder as to

280

the 1966 conveyance. Therefore, notwithstanding Augustin's introduction of Wilder's deposition and Withers' deed of Lot 6, I find and rule that plaintiff has not clearly and convincingly established the mutual mistake of the named defendants as to the reconveyance deed executed on June 13, 1966.

Additionally, no evidence was introduced at trial as to the intent of Shirley K. Withers, now deceased, who was a tenant by the entirety with her husband, Walter C. Withers, Jr., and was a co-grantor in the February 29, 1964 deed to Wilder.

In any event, even if plaintiff had established her case, the objective of Withers and Wilder at the time of the initial conveyance of Lot 4 would have been to manipulate lot ownership in such a way as to circumvent an imminent zoning amendment to the town of Wellesley by-laws. The courts of this Commonwealth have not favored manipulations which "attempt to preserve non-standards lots for building purposes." **Giovannucci v. Board of Appeals of Plainville,** 4 Mass. App. Ct. 239, 243 (1976), **dir. app. rev. den.,** 370 Mass. 867 (1976), citing **Sorenti v. Board of Appeals of Wellesley,** 345 Mass. 348, 352 (1963).

For all the foregoing reasons, I rule that the plaintiff, Ellyn G. Carlson, has failed to prove by clear convincing evidence that Lot 5 was omitted from the deeds in question by the mutual mistake of Withers and Wilder. The plaintiff is not, therefore, entitled to reformation.

Both the plaintiff and defendant-intervenor have submitted requests for findings of facts and rulings of law and I find and rule as follows:

Plaintiff's requests No. 1, 12, 13, 15 and 16 are granted and Nos. 2, 4, 5, 14 and 17 are denied. While requests 3, 7, 8, 9, 10 and 11 appear to be superficially correct, each is inapplicable to the facts found and I so rule. Plaintiff's request No. 6 is granted, but the court makes note of the inherent, independent obligation of the court to do substantial justice in the absence of adverseness.

Defendants' requests Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 16, 17 and 18 are granted. Requests Nos. 13, 15, and 25 are denied. Construing defendants' requests No. 19, 20, 21, 23 and 24 containing the language "insufficient evidence" to mean insufficient to carry the plaintiff's burden of clear and convincing proof which is required in a reformation case, I grant said requests.

Judgment to enter accordingly.

**John E. Fenton, Jr., Justice**